UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| NINTENDO OF AMERICA INC., a Washington corporation,<br><br>Plaintiff,<br><br>v.<br><br>KEVIN NIU, a.k.a. Kui Niu, an individual, d/b/a www.nxpgame.com, www.wiiloveds.com, and www.kniu.net; and NXPGAME, INC.,<br><br>Defendants. | Case No.<br><br>COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES |

## **COMPLAINT**

1. This is an action seeking damages, injunctive and other equitable relief, and attorneys' fees arising out of Defendants' importation of, marketing of, and trafficking in devices that are designed to circumvent the technological protection measures built into the enormously popular Nintendo DS and DSi handheld video game system (the "Nintendo DS"). These devices are marketed and sold by Defendants under brand names, including, but not limited to, M3 DS Real Card (with Rumble Pack), DS Linker (8G), R4 DS Revolution, Supercard DS One SDHC, M3 DS Real Card (with Rumble RAM Pack), EZ-Flash Vi for DS/DSL/DSi, Gold R4i Revolution SDHC MicroSD/Transflash Adapter Flash Card

1  for NDSi/NDS/DS Lite, Acekard 2, New R4i, DSTTi for DSi, NDS, NDSL, R4 DS, R4i SDHC, Supercard DS One i, iTouch, iTouch2.  Because they are used to play pirated video games on the Nintendo DS, these devices are colloquially known, and are collectively referred to herein, as "Game Copiers."

2. Defendants' importation, marketing, and sale of Game Copiers, and use of registered trademarks and copyrights in connection with those actions, has damaged Plaintiff Nintendo of America Inc. ("NOA"), infringes and threatens irreparable injury to NOA's intellectual property rights, and violates the Digital Millennium Copyright Act, 17 U.S.C. § 1201 *et seq.*, the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and the Copyright Act, 17 U.S.C. § 101 *et seq.*, entitling NOA to the relief sought herein.

## THE PARTIES

3. NOA is a Washington corporation headquartered in Redmond, Washington.  NOA is a wholly-owned subsidiary of Nintendo Co. Ltd. ("NCL"), a Japanese company headquartered in Kyoto, Japan (collectively, NOA and NCL are referred to herein as "Nintendo").  NOA is responsible for the marketing, sale and enforcement of Nintendo's intellectual property rights in the Western Hemisphere. NCL develops and manufactures, and NOA markets and distributes, electronic video game systems, games, and accessories.

4. Defendant Kevin Niu is an individual who, on information and belief, is also known as Kui Niu.  On information and belief, Defendant Niu does business as www.nxpgame.com, www.wiiloveds.com, and www.kniu.net, (hereinafter referred to as "the Websites").  Through the Websites, Defendant Niu is engaged in the business of importing, marketing, and trafficking in, among other things, Game Copiers.  Defendant Niu also uses Nintendo's registered trademarks and copyrights in connection with the Websites.  Defendant Niu personally benefits from such activities and intentionally directs his activities at this District knowing that such actions will directly harm Washington residents.

5.      Defendant NXPGAME, Inc. ("NXPGAME") is, on information and belief, a corporation with an address of 5829 254th Street, FL2, Little Neck, New York, an address associated with Defendant Niu. On information and belief, NXPGAME is an alter ego of Defendant Niu and www.nxpgame.com, and accordingly does business in this District and on the Internet. On information and belief, NXPGAME is engaged in the business of importing, marketing, and trafficking in, among other things, Game Copiers.

6.      Each of the Defendants is responsible for the importation, marketing, provision, and/or trafficking of Game Copiers in this District.

7.      Each of the Defendants is an agent of the other.

8.      Upon information and belief, Defendant Niu does business as NXPGAME, www.nxpgame.com; www.wiiloveds.com; and www.kniu.net. Upon information and belief Defendant Niu also owns, operates, or otherwise controls NXPGAME and the Websites, personally participated in or had the right and ability to direct and control the wrongful conduct alleged in this Complaint, and derived direct financial benefit from that wrongful conduct.

## JURISDICTION AND VENUE

9.      The Court has subject matter jurisdiction over the claims alleged herein pursuant to 28 U.S.C. §§ 1331 (federal question), 1367 (supplemental), and 1338(a) (trademark and copyright), and 1338(b) (related claims of unfair competition) and 17 U.S.C. §1203 (DMCA).

10.     Venue is proper in this District under 28 U.S.C. §§ 1391(b) and 1400(a) because a substantial part of the infringing acts occurred in this District due to the fact that Defendants' contact is directed towards and harms residents of this District.

11.     This Court has personal jurisdiction over all Defendants by virtue of their business transactions in this district and pursuant to RCW 4.28.185. Defendants have made, and continue to make, the infringing Websites available to

countless users within this District; have directed the Websites at residents of this District; and have sold Game Copiers into this District.

## FACTS COMMON TO ALL CLAIMS
## NINTENDO'S INTELLECTUAL PROPERTY AND PRODUCTS

12. Nintendo is a famous brand and Nintendo video game systems (such as the Nintendo DS, Nintendo DS Lite, Nintendo DSi, Game Boy, and Wii) are well-known and loved among consumers in the United States and abroad. In addition, several of the games offered by Nintendo involve its famous Nintendo characters, including the Mario and Luigi characters that appear in Nintendo's SUPER MARIO BROS. games. In fact, Nintendo's Mario character has been referred to as one of the most famous video game characters in history. Nintendo has received a significant number of copyright registrations covering the Mario, Luigi and Yoshi characters. Other well-known Nintendo games and characters include Mario Kart, Pokémon, Donkey Kong, and Zelda.

13. The popularity of Nintendo's video game systems, games, and characters is the result of substantial creative and financial investment in product development, game development, intellectual property, and marketing. Nintendo has received many awards for its pioneering contributions to the video game industry and is an acknowledged leader in the field. Nintendo has earned tremendous consumer awareness and goodwill through its commitment to developing innovative, fun, and exciting video game systems and games, and Nintendo video game systems and games are enjoyed by tens of millions of consumers in the United States and abroad.

14. As part of its business, Nintendo owns the famous and distinctive *Wii* trademark, used in connection with Nintendo's tremendously successful and popular video game system. Nintendo and its affiliates presently market and distribute the Wii video game system, as well as numerous Wii video games and a wide range of Wii products, ranging from bags and backpacks to clothing to chewing gum. The

1  *Wii* trademark and Wii products have been widely advertised and extensively
2  offered throughout the United States (and worldwide).  The *Wii* trademark has
3  become famous through widespread and favorable public acceptance and
4  recognition and is an asset of substantial value to Nintendo.

5        15.    Nintendo is the owner of numerous registrations in the United States
6  for the *Wii* mark and other marks incorporating *Wii*.  These trademark registrations
7  are in full force and effect and are owned by Nintendo.  Nintendo also holds
8  trademark registrations for the *Wii* mark in numerous other countries, including
9  Argentina, Bolivia, Brazil, Canada, Chile, Colombia, Costa Rica, Ecuador,
10  European Union, Jamaica, Japan, Mexico, Panama, Peru and Venezuela.

11        16.    In addition, Nintendo has registered and actively uses domain names
12  that incorporate its famous *Wii* trademark.  Nintendo and/or its affiliates use these
13  domain names for such purposes as marketing, operating fan websites that provide
14  information about Wii news, games, and products to its consumers.  Wii.com,
15  which is owned by Nintendo, is the location of Nintendo's primary Wii Website.
16  The Website has been active as the site for Nintendo's Wii products and services
17  since at least as early as January 6, 2007.

18        17.    Nintendo has made substantial investments in the development,
19  marketing, and promotion of its innovative products.  Nintendo has acquired
20  intellectual property and authorizes licensees who create and publish many popular
21  video games specifically and exclusively for play on Nintendo video game systems
22  (collectively, software games created by Nintendo and its authorized licensees for
23  the Nintendo DS are referred to herein as "Nintendo DS Games").  Nintendo DS
24  Games can take years and millions of dollars to develop.

25        18.    NOA holds copyright and trademark rights in and to various Nintendo
26  DS Games, Nintendo video game systems and video game characters, including,
27  without limitation, those listed at Exhibits A and attached as Exhibits B and C.
28

14372-0904/LEGAL18181027.1    -5-    COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

19. Among Nintendo's video game systems is the enormously popular Nintendo DS, a proprietary dual-screen handheld portable video game system featuring a clamshell design with two LCD screens inside, the bottom one a touchscreen. The original version, the Nintendo DS, was released in the United States in 2004. The Nintendo DS Lite (*see* fig. 1), a slimmer, brighter, and more lightweight version of the Nintendo DS, was released in the U.S. in June 2006. The latest version, the Nintendo DSi, was released in the U.S. in April 2009. The Nintendo DSi adds multimedia features, cameras, and other enhancements. The Nintendo DS family of systems has enjoyed immense popularity.

**Fig. 1**



20. A user plays a video game on the Nintendo DS by inserting an authorized game cartridge (referred to herein as "Nintendo DS Game Card") into the Nintendo DS for game play. NOA does not authorize and has never authorized the copying or downloading of Nintendo Games onto devices, such as Game Copiers, that mimic authorized Nintendo DS Game Cards and bypass the protection measures that protect the Nintendo DS. NOA does not authorize and has never authorized Nintendo DS Games to be copied onto personal computers or to be downloaded from personal computers to devices like Game Copiers.

## NINTENDO'S EFFORTS TO PROTECT
## ITS INTELLECTUAL PROPERTY RIGHTS

21.     The popularity of the Nintendo DS has made Nintendo the target of intellectual property pirates, who benefit from Nintendo's innovation and investment by making unauthorized copies of Nintendo DS Games, or by creating (and profiting from) the means by which others can play pirated copies of Nintendo DS Games on a Nintendo DS.  Game Copiers are the most popular means for playing pirated games on the Nintendo DS.

22.     Illegal copying of video game software is an international problem of enormous proportions and great financial consequence for Nintendo.  Nintendo has taken many steps to halt the illegal copying, marketing, sale, and distribution of Nintendo DS Games.

23.     Nintendo's efforts have included registration of the intellectual property rights in and to its video game systems and software.  In addition, Nintendo protects and enforces its rights through legal actions brought around the world to stop individuals and companies from trafficking in Game Copiers.  In fact, United States Customs has already determined that similar products that circumvent Nintendo's technical protection measures are violations of 17 U.S.C. § 1201.

24.     Nintendo also employs a number of measures to protect and control access to its copyrighted works.  As to the Nintendo DS, these include both design-based and technological measures.  Nintendo designed the Nintendo DS so that it will play only game cards that have a particular shape, with unique external geometry and electrical connections.  Nintendo also built technological protection measures into the Nintendo DS.  These technological measures implement a process by which commands and data are exchanged between the Nintendo DS and the game card that is inserted into the Nintendo DS for play.  Multiple copyrighted programs are repeatedly accessed and copied during the operation of the Nintendo DS protection system and the game play that occurs if the protection measures are

14372-0904/LEGAL18181027.1                    -7-                    COMPLAINT FOR INJUNCTIVE RELIEF
                                                                                         AND DAMAGES

1  passed.  The technological measures of the Nintendo DS ensure that even if a user
2  inserts into the Nintendo DS a game card that fits perfectly into the uniquely-shaped
3  Nintendo DS card slot, unless the game card also has the software necessary to pass
4  (or to circumvent) the Nintendo DS technological protection measures, the game
5  card cannot be played on the Nintendo DS.

## DEFENDANTS' INFRINGING ACTIVITIES

7  25. Defendants, in particular the Websites, display Nintendo's registered
8  trademarks and copyrights.  In addition, the website www.wiiloveds.com
9  incorporates Nintendo's famous *Wii* trademark in the URL.  Defendants'
10 www.wiiloveds.com website states that all trademarks, service marks and trade
11 names appearing on the website are "trademarks or registered trademarks of
12 www.wiiloveds.com."

13 26. Defendants presently market, sell and traffic in, and on information
14 and belief also import, Game Copiers.

15 27. The Game Copiers that are imported, marketed, sold, and trafficked in
16 by Defendants enable those who use them to download games to portable memory
17 storage devices and to circumvent the technological measures employed by
18 Nintendo to control access to its copyrighted works and to protect its rights as a
19 copyright owner.

20 28. Game Copiers employ a number of components, including (1) a game
21 card (referred to herein as the "Game Copier Card") that is substantially the same
22 shape, and has substantially the same electrical connection configuration, as
23 Nintendo's proprietary Nintendo DS Game Cards, so that a Game Copier Card fits
24 perfectly in the Nintendo DS and resembles an authorized Nintendo DS game card;
25 and (2) a portable memory device (or instructions to purchase one) that can hold
26 multiple pirated Nintendo DS Games and that is inserted into the Game Copier
27 Card for game play.  Defendants sell Game Copiers that have unauthorized copies
28 of Nintendo data that is necessary to bypass Nintendo's technological protection

1  measures already installed or, where such data is not pre-installed, Defendants
2  direct their customers to the Websites, in particular www.nxpgame.com and
3  www.kniu.net, or third party websites, to download to the Game Copier Card
4  unauthorized copies of Nintendo data that is necessary to bypass Nintendo's
5  technological protection measures.

6  29.  When Game Copiers are used as Defendants instruct, and as required
7  by the products they traffic in, they bypass Nintendo's technological protection
8  measures and gain the same access to the Nintendo DS, and to certain of NOA's
9  copyrighted programs, as an authorized Nintendo DS Game Card would have.

10 30.  Game Copier cards are specifically designed to accommodate portable
11 memory devices that hold enormous amounts of data.  Consequently, hundreds of
12 pirated games may be downloaded onto just one Game Copier card, which then
13 allows the user to play any of these pirated games on a Nintendo DS.

14 31.  When Game Copiers are used as instructed by Defendants, and as
15 required by the products they traffic in, they will cause the following federally
16 registered NINTENDO logo to appear on the screen of a DS system:



19 32.  Defendants' display of this trademarked logo is without NOA's
20 authorization or consent, and it implies and confuses consumers into believing that
21 there is some sponsorship, affiliation, or endorsement by Nintendo.

22 33.  Nintendo has never authorized any Game Copiers, and the Game
23 Copiers at issue in this case were not authorized by Nintendo or on its behalf.

24 34.  Defendants are well aware of Nintendo's rights, the extent of the
25 problem of piracy, and Nintendo's enforcement efforts.  Nintendo, through its
26 counsel, repeatedly contacted Defendant Niu regarding his infringing activities and
27 requesting him to cease all such actions.

28

35. The first contact was on June 1, 2009. Defendant Niu replied on June 8, 2009 stating that he would stop selling Game Copiers. As of June 10, 2009, Nintendo's counsel confirmed that the illegal products had been removed from www.nxpgame.com.

36. On June 22, 2009 Defendant Niu resumed selling Game Copiers on www.nxpgame.com. On July 6, 2009, Nintendo's counsel sent another letter to Defendant Niu informing him of his continued infringement of Nintendo's intellectual property and again demanded that he cease and desist all further sales and marketing of Game Copiers by July 9, 2009.

37. Continued monitoring of the Defendant's website showed that on August 13, 2009 Game Copiers were still offered for sale but that purchase ability was disabled on www.nxpgame.com. From August 18, 2009 through August 31, 2009, the Defendant offered products again on www.nxpgame.com.

38. On September 1, 2009, Nintendo's counsel sent a fourth demand letter to Defendant Niu. On September 2, 2009, Nintendo's counsel received a phone call from Defendant Niu's attorney advising that Defendant Niu would be pulling all products from his websites. On September 18, 2009 the URL for www.nxpgame.com was active but "business closed" was displayed on the site.

39. On November 9, 2009, www.nxpgame.com displayed a coupon for 10% off at www.wiiloveds.com: "get 10% off with coupon at nxpgame10." As of November 12, 2009, www.nxpgame.com was directing its consumers to www.wiiloveds.com. As of March 16, 2010, www.nxpgame.com was redirecting users to www.wiiloveds.com.

40. On information and belief, Defendants have derived significant profit and financial benefit from their involvement in the importation of, marketing of, and trafficking in Game Copiers. Defendants knew or should have known that Game Copiers infringed Nintendo's intellectual property rights, and their infringement of those rights has been willful and deliberate.

# CAUSES OF ACTION

# FIRST CLAIM

# VIOLATION OF THE DIGITAL MILLENNIUM COPYRIGHT ACT

# (17 U.S.C. § 1201 *et. seq.*)

41. NOA realleges and incorporates by reference paragraphs 1-40.

42. Defendants were and are actively engaged in the business of marketing, importing, offering to the public, providing, or otherwise trafficking in Game Copiers. Game Copiers are used, by Defendants and others, to circumvent the technological measures that effectively control access to NOA's copyrighted works and protect NOA's rights as a copyright owner.

43. Game Copiers (a) are primarily designed or produced for the purpose of circumventing technological measures that effectively control access to works protected by NOA's copyright, or that effectively protect NOA's rights as a copyright owner; (b) have only limited commercially significant purpose or use other than to circumvent such technological measures; or (c) are marketed by Defendants, acting alone or in concert with others, for use in circumventing such technological measures, in violation of 17 U.S.C. §§ 1201(a)(1), 1201(a)(2), and 1201(b).

44. NOA holds valid copyrights, duly and properly registered with the United States Copyright Office, including those identified at Exhibit B. True and correct copies of the Registration Certificates for these copyrights are attached at Exhibit C. The technological measures employed by Nintendo were intended to control access to and to protect NOA's rights to these copyrights.

45. Defendants knew or had reason to know the purpose and use of the Game Copiers that they marketed, imported, offered to the public, provided, or otherwise trafficked in. Defendants' actions were willful, and were taken for their own commercial advantage or private financial gain. Defendants knew or should

have known that offering to the public, providing, and trafficking in Game Copiers was unlawful.

46. Defendants' violations have injured and will continue to injure NOA. NOA is entitled to recover its actual damages and Defendants' profits resulting from Defendants' wrongful conduct, pursuant to 17 U.S.C. § 1203(c)(2). Alternatively, NOA is entitled to statutory damages pursuant to 17 U.S.C. § 1203(c)(3).

47. NOA also is entitled to injunctive relief pursuant to 17 U.S.C. § 1203(b)(1) and to an Order impounding any materials involved in Defendants' violation of the Digital Millennium Copyright Act pursuant to 17 U.S.C. § 1203(b)(3).

48. Defendants' wrongful conduct has caused and will continue to cause NOA irreparable harm, and NOA has no adequate remedy at law to redress any continued violations. Unless restrained by this Court, Defendants will continue to violate the Digital Millennium Copyright Act.

49. NOA also is entitled to recover its attorneys' fees and costs of suit pursuant to 17 U.S.C. § 1203.

## SECOND CLAIM
## DIRECT COPYRIGHT INFRINGEMENT
**(Violations of 17 U.S.C. § 106 *et seq.*)**

50. NOA realleges and incorporates by reference paragraphs 1-49.

51. NOA owns numerous copyright registrations related to the Nintendo characters, including, without limitation, those identified at Exhibit B. These copyright registrations, attached at Exhibit C, are in full force and effect and are enforceable by NOA.

52. In connection with their sale, marketing and distribution of Game Copiers, Defendants use NOA's copyrighted characters, including, but not limited to Mario, Luigi and Yoshi, throughout the www.wiilovedds.com website to

promote their business of selling Game Copiers, thereby infringing NOA's copyrights.

53. The foregoing acts of Defendants constitute the direct infringement in violation of Nintendo's exclusive rights in its copyrighted works under 17 U.S.C. § 106.

54. Defendants' actions thus constitute direct infringement of Nintendo's copyrights in violation of 17 U.S.C. § 501.

55. Defendants knew or should have known of Nintendo's exclusive rights under the copyright laws of the United States. Defendants' acts in violation of Nintendo's rights have been willful and deliberate and have resulted in damage to Nintendo in an amount to be proved at trial.

## THIRD CLAIM

## CONTRIBUTORY AND VICARIOUS COPYRIGHT INFRINGEMENT

### (Violations of 17 U.S.C. § 106 *et seq.*)

56. NOA realleges and incorporates by reference paragraphs 1-55.

57. NOA owns numerous copyright registrations related to the Nintendo Games, including, without limitation, those identified at Exhibit B. These copyright registrations, attached at Exhibit C, are in full force and effect and are enforceable by NOA.

58. In connection with their sale, marketing and distribution of Game Copiers, Defendants instruct users how to download material from the Internet, including directing users to third party websites to download pirated Nintendo Games, load the material into Game Copiers, and play the material on a Nintendo DS. Game Copiers are used with portable memory devices that allow multiple games to be loaded and played on a single Game Copier. Defendants distribute Game Copiers with the object of promoting their use to infringe NOA's copyrights.

59. The foregoing acts of Defendants constitute the vicarious or contributory reproduction, preparation of derivative works, distribution, and

1  inducement of same, in violation of Nintendo's exclusive rights in its copyrighted

2  works under 17 U.S.C. § 106.

3      60.    Defendants' actions thus constitute actual and threatened vicarious

4  infringement, contributory infringement, and inducement of infringement of

5  Nintendo's copyrights in violation of 17 U.S.C. § 501.

6      61.    Defendants knew or should have known of Nintendo's exclusive rights

7  under the copyright laws of the United States, of their inducement and aid in the

8  accomplishment of infringement by others.  Defendants' acts in violation of

9  Nintendo's rights have been willful and deliberate and have resulted in damage to

10  Nintendo in an amount to be proved at trial.

## FOURTH CLAIM

## TRADEMARK INFRINGEMENT

### (Violations of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a))

14      62.    NOA realleges and incorporates by reference paragraphs 1-61.

15      63.    NOA owns federal registrations for the trademarks identified at

16  Exhibit A.  These registrations are in full force and effect and are enforceable.

17      64.    In connection with their sale, marketing and distribution of Game

18  Copiers, Defendants use NOA's trademarks throughout the Websites to promote

19  their business of selling Game Copiers, including the use of Nintendo's famous *Wii*

20  trademark in the URL www.wiiloveds.com, thereby infringing NOA's trademarks.

21      65.    When a Game Copier is used as directed by Defendants, it will cause

22  Nintendo's federally registered logo to appear on the screen of the Nintendo DS:



25      66.    Defendants' actions constitute use in interstate commerce of a false

26  designation of origin, false or misleading description of fact, or false or misleading

27  representation of fact that is likely to cause confusion or mistake, or to deceive as to

28  the affiliation, connection, or association of the goods and services with Nintendo,

1  or as to the origin, sponsorship, or approval of the goods and services provided by
2  Defendants in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

3  67.  Defendants' actions also constitute the making or use in interstate
4  commerce of a reproduction, counterfeit, copy, or colorable imitation of a
5  registered trademark of NOA in connection with the sale, offering for sale,
6  distribution, or advertising of goods or services on or in connection with which
7  such use is likely to cause confusion or mistake, or to deceive, in violation of
8  section 32 of the Lanham Act, 15 U.S.C. § 1114.

9  68.  Defendants knew or should have known of NOA's rights, and
10 Defendants' infringement has been knowing, willful, and deliberate, making this an
11 exceptional case within the meaning of 15 U.S.C. § 1117.

12 69.  The infringing acts alleged above have a foreseeable effect on U.S.
13 commerce.

14 70.  NOA has been and continues to be damaged by Defendants' wrongful
15 acts in a manner that cannot be fully measured or compensated in economic terms,
16 and NOA has no adequate remedy at law.  Defendants' acts have damaged, and
17 threaten to continue to damage, NOA's reputation and goodwill.

18 71.  Defendants' infringement will continue unless enjoined by the Court.

19 72.  The interests of and links to U.S. commerce are strong in relation to
20 those of other nations given that, among other things, enforcement of NOA's rights
21 under the Lanham Act does not conflict with, but rather supports, the interests of
22 other countries in enforcing Nintendo's similar rights under the laws of those
23 countries, and the significance of Defendants' illegal acts is greatest in the United
24 States because NOA is a U.S. corporation with a general sales territory in the
25 Western Hemisphere, including the United States.

26
27
28

## FIFTH CLAIM

## UNFAIR COMPETITION

### (RCW 19.86 *et seq.*)

73.  NOA realleges and incorporates by reference paragraphs 1-72.

74.  The acts of Defendants complained of herein constitute unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade commerce within the meaning of section 19.86 *et seq.* of the Revised Code of Washington.

75.  Defendants' acts have been willful and persistent and have occurred over the course of several years, since at least 2007.  As a direct and proximate result of Defendants' violations of Revised Code of Washington section 19.86 *et seq.*, NOA has suffered and will continue to suffer both damages and irreparable harm for which NOA has no adequate remedy at law.  Unless enjoined, Defendants will commit further violations.

## JURY DEMAND

NOA demands a trial by jury of all issues so triable.

## PRAYER FOR RELIEF

NOA seeks the following relief:

1.  An award of compensatory damages, including consequential and incidental damages, in an amount to be proved at trial.

2.  An award of statutory damages as allowed by law, in an amount up to $150,000 for infringement of each Nintendo copyrighted work, up to $2,000,000 for infringement of each Nintendo trademark, and up to $2,500 for each violation of 17 U.S.C. § 1201.

3.  An award of enhanced damages or profits, whichever is proved greater, pursuant to section 35 of the Lanham Act, 15 U.S.C. § 1117, and as otherwise provided by law.

4.  An award of attorneys' fees and costs.

1    5.   An award of prejudgment and postjudgment interest at the maximum
2  rate allowed by law.
3    6.   An accounting of all Game Copiers that were or are within Defendants'
4  possession, custody or control.
5    7.   An accounting and an award to NOA of Defendants' profits, gains, or
6  unjust enrichment in an amount to be proved at trial.
7    8.   An accounting of all Defendants' receipts and disbursements, profit
8  and loss statements, and other financial materials, statements, and books relating to
9  Defendants' importation, distribution, marketing or sale of any Game Copier.
10   9.   A preliminary and permanent injunction pursuant to 17 U.S.C. §§ 1203
11  and 502, and 15 U.S.C. § 1116, enjoining Defendants, their agents, servants, and
12  employees, and all those in active concert or participation with Defendants, from:
13        a)   importing, manufacturing, offering to the public, providing, using or
14             otherwise trafficking in any technology, product, service, device,
15             component or part thereof (including Game Copiers), that is primarily
16             designed or produced to circumvent a technological measure that
17             effectively protects NOA's rights as a copyright owner, or controls
18             access to any work to which NOA holds a registered copyright;
19        b)   importing, manufacturing, offering to the public, providing, using or
20             otherwise trafficking in any technology, product, service, device,
21             component or part thereof (including Game Copiers), that has only
22             limited commercially significant purpose or use other than to
23             circumvent a technological measure that effectively protects NOA's
24             rights as a copyright owner, or controls access to any work to which
25             NOA holds a registered copyright;
26        c)   importing, manufacturing, offering to the public, providing, using or
27             otherwise trafficking in any technology, product, service, device,
28             component or part thereof (including Game Copiers), that is marketed

14372-0904/LEGAL18181027.1          -17-          COMPLAINT FOR INJUNCTIVE RELIEF
                                                             AND DAMAGES

|    |    |    |
|---|---|---|
| 1  |    | by Defendants or others acting in concert with them for use in |
| 2  |    | circumventing a technological measure that effectively protects NOA's |
| 3  |    | rights as a copyright owner, or controls access to any work to which |
| 4  |    | NOA holds a registered copyright; |
| 5  | d) | using, or inducing or enabling others to use, any reproduction, |
| 6  |    | counterfeit, copy, or colorable imitation of NOA's trademarks, |
| 7  |    | including those identified at Exhibit A, in any manner in connection |
| 8  |    | with the manufacture, printing, distribution, advertising, offering for |
| 9  |    | sale or sale of any goods or merchandise, including the use of |
| 10 |    | Nintendo's trademarks in connection with a website; |
| 11 | e) | using, or inducing or enabling others to use, NOA's trademarks, |
| 12 |    | including those identified at Exhibit A, or any reproduction, |
| 13 |    | counterfeit, copy, or colorable imitation of said marks in any manner |
| 14 |    | likely to cause others falsely to believe that Defendants' products are |
| 15 |    | connected with Nintendo or legitimate Nintendo products bearing |
| 16 |    | NOA's trademarks when they are not, including the use of Nintendo's |
| 17 |    | trademarks in connection with a website; |
| 18 | f) | using, or inducing or enabling others to use, any reproduction, |
| 19 |    | counterfeit, copy, or colorable imitation of NOA's copyrights, |
| 20 |    | including those identified at Exhibits B and C, in any manner in |
| 21 |    | connection with the manufacture, printing, distribution, advertising, |
| 22 |    | offering for sale or sale of any goods or merchandise, including the use |
| 23 |    | of Nintendo's copyrights in connection with a website; |
| 24 | g) | copying, distributing, or otherwise using any portion of NOA's |
| 25 |    | copyrighted software code, or any derivative thereof, in any manner in |
| 26 |    | the manufacture, assembly, distribution, advertisement, promotion, |
| 27 |    | offering for sale, or sale of goods or merchandise; |
| 28 |    |    |

h) selling, distributing, lending, publicly performing or playing any unauthorized copy of any NOA copyrighted work;

i) importing, exporting, shipping, delivering, distributing, transferring, returning, holding for sale, destroying, or otherwise moving, storing or disposing of any Game Copiers or any other item or product bearing or used to reproduce any unauthorized reproduction, counterfeit, copy or colorable imitation of NOA's trademarks and/or NOA's copyrights;

j) destroying, transferring, altering, moving, returning, concealing, or in any manner secreting any and all Game Copiers, and any and all Documents and records, including without limitation computer tapes, computer disks, business records, emails, supplier names and addresses, shipment records, books of accounts, receipts, specifications, packaging and containers, and other documentation relating or referring in any way to the importation, manufacturing, offering to the public, providing, using, or otherwise trafficking in Game Copiers.

k) marketing, selling, importing, supplying or otherwise providing any product, device, or component thereof that contributes to or induces the copying of NOA's copyrighted software; and

l) unfairly competing with Nintendo.

10. Preliminary and permanent injunctive relief, such as may later be requested before or at trial, requiring Defendants and all persons or entities in active concert or participation with Defendants, immediately to:

a) identify every supplier to each Defendant of every Game Copier; and

b) take steps to ensure that all Game Copiers in any Defendant's possession, custody, or control or that are in shipment to any Defendant are immediately seized, inspected, and delivered into NOA's possession.

1    11.    An Order pursuant to 17 U.S.C. §§ 1203 and 503 and 15 U.S.C. § 1116 providing for the seizure, impoundment, and destruction of all Game Copiers within any Defendant's custody, possession or control.

12.    An Order requiring Defendants to file with the Court and serve upon Nintendo within ten (10) days after the issuance of any injunction a written report, under oath, setting forth in detail the manner and form in which Defendants have complied with the injunction.

13.    An Order that the WWW.WIILOVEDS.COM domain name be transferred to Nintendo.

14.    An Order permanently enjoining Defendants from using any Nintendo trademarks in any website domain name or URL.

15.    Such other relief as the Court deems just and proper.

DATED: May 11, 2010                **PERKINS COIE LLP**

By: */s/ Susan D. Fahringer*
Susan D. Fahringer, WSBA No. 21567
SFarhinger@perkinscoie.com
Charles C. Sipos, WSBA No. 32825
Csipos@perkinscoie.com
**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000

Attorneys for Plaintiff
Nintendo of America Inc.